SAMUEL JONES, APPELLEE, v. RICHARD NORVAL ET AL.,
APPELLEES, IMPLEADED WITH FARMERS MUTUAL
INSURANCE COMPANY OF NEBRASKA, APPELLANT.

279 N. W. 2d 388

Filed May 29, 1979. No. 42043.

Barlow, Johnson, DeMars & Flodman and John F. Recknor, for appellant.

Michael O. Johanns and Scott T. Robertson of Peterson, Bowman, Larsen & Swanson, for appellee Jones.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action for a declaratory judgment that a homeowner's insurance policy provided coverage for a judgment against an assured for a willful and intentional assault. The District Court, after trial, granted plaintiff's motion for a directed verdict and entered judgment for the plaintiff and against the defendant, Farmers Mutual Insurance Company of Nebraska, for $5,000, the amount of the assault judgment, less a stipulated credit. The insurance company has appealed.

In November 1975, plaintiff, Samuel Jones, recov-

ered a judgment against the defendant, Richard Norval, for $5,000 and costs for a willful, intentional assault in which Norval hit Jones in the face with his fist and broke Jones' jaw. Richard Norval was an 18-year-old minor who resided with his parents in their home and was an insured person under a homeowner's insurance policy, issued by the defendant, Farmers Mutual Insurance Company of Nebraska. Plaintiff's demand for payment of the judgment was rejected by the insurance company upon the ground that the insurance policy excluded coverage for the assault. This action for declaratory judgment followed.

The matter was tried by stipulation of the parties on the basis of the testimony in the prior assault trial and on the depositions of the plaintiff and the defendant, Richard Norval. The evidence established that on October 4, 1973, Richard Norval went to Jones' residence to talk to him about certain derogatory remarks about Norval that Jones had supposedly made to Norval's girl friend. Norval was 18 years old and a 3-sport athlete who had graduated from high school the preceding spring. Jones was a senior in high school. When Norval arrived at the Jones' residence, he asked Jones to come out on the porch and the two discussed the matter for approximately 10 minutes. At that time Jones attempted to go into the house, but Norval placed his hand against the door to prevent it. Jones pushed Norval's hand away and Norval hit Jones in the face, striking him with his closed fist, knocking him out, and breaking his jaw. Norval's testimony was that he did not intend to injure Jones, that he reacted instinctively, and that he did not expect to hurt Jones. The following question and answer are crucial. "Q. * * * whether or not you intended to cause harm, you intended to hit him? That's true, isn't it? A. Yes, that's true." Essentially Norval's testimony was that although he intended to hit Jones, he only in-

tended to cause a sting or a bruise but not a serious injury that would require medical attention.

The insurance policy contained an exclusion providing: "This policy does not apply: * * * to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." The District Court specifically found that Norval did not expect or intend to cause injury or damage to the plaintiff and did not act with the specific intent to cause harm. The District Court sustained plaintiff's motion for directed verdict and entered judgment against the defendant insurance company in the amount of $5,000 less a stipulated $984 credit. The court also taxed attorney's fees and costs to the defendant.

The critical issue in this case is whether Norval expected or intended to cause bodily injury to Jones and whether or not the subjective testimony of Norval that he did not intend to injure Jones is sufficient to raise a factual issue of intent for submission to the fact finder.

In State Farm Fire & Cas. Co. v. Muth, 190 Neb. 248, 207 N. W. 2d 364, this court specifically considered the language of the exclusion involved here. In that case we affirmed the trial court's determination that a youth who fired a B-B gun from a slowly moving automobile without specific aim and struck a schoolmate did not intend or expect to do bodily injury to the schoolmate, but only intended to scare him. In that case we held that: "[U]nder the language of the exclusion in question, an injury is either expected or intended if the insured acted with the specific intent to cause harm to a third party. It seems to us to be immaterial whether the injury which results was specifically intended, i.e., the exclusion would apply even though the injury is different from that intended or anticipated." This court recognized that it was difficult to precisely delineate the scope of the rule and it cited and discussed nu-

merous cases illustrating the scope of the rule. We said: "The term 'expected' when used in association with 'intended' carries the connotation of a high degree of certainty or probability and seems to be used to practically equate with 'intended,' because one expects the consequences of what one intends." This court pointed out in the Muth case the practical factual differences which distinguish that case from the one now before us. In the Muth case we said: "If, in the situation before us, the trial court had found that Allen had intended to hit James, even though he might have intended no serious injury, the language of the exclusion would have eliminated coverage."

In the case now before us there is no way in which Norval can avoid his specific admission that he intended to hit Jones, and there is no escape from the fact that he hit him hard enough to break his jaw and knock him out. A physically mature 18-year-old athlete who intentionally hits another person in the face with his fist hard enough to break his jaw and render him unconscious must be said to expect or intend the natural, normal consequences of his own intentional act. In the language of the Muth case, such a rule "will tend to promote the public policy of excluding coverage where there is a deliberate intention to cause physical harm or where, * * * such intention must be attributed as a matter of law because the acts are of such a nature that the injury must necessarily be expected." Numerous cases support that position. In Rankin v. Farmers Elevator Mutual Insurance Company, 393 F. 2d 718 (10th Cir., 1968), the insured deliberately sideswiped a motorcycle causing personal injuries to the rider. The court said: "Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional."

In Hins v. Heer, 259 N. W. 2d 38 (N. D., 1977), an

intentional blow to the jaw was involved as well as the same language in an exclusionary clause. The court dismissed the action against the insurance company and said: "Nothing in the record before us supports a finding that Heer's blow was an accident or unintentional. Further, we find no merit in Hins's assertion that a distinction exists between Heer's intentional act of assaulting Hins and the consequences of such assault. * * * The 'occurrence' giving rise to the instant case falls clearly within the purview of Exclusion Clause 1 (f) of Heer's homeowner's insurance policy."

In Steinmetz v. Nat. Am. Ins. Co., 589 P. 2d 911 (Ariz. App., 1978), the identical exclusionary clause was involved. The facts are likewise virtually identical in that the insured struck the plaintiff in the face causing serious injuries. The court upheld a summary judgment for the insurer and held that notwithstanding the actor's statement to the contrary, the act of striking another in the face was an act so certain to cause a particular kind of harm that the actor who performed such an act intended the resulting harm for purposes of the liability policy provision. The Arizona court stated: "The exclusion here is unambiguous. By its language it excludes from coverage the intentional acts of the insured which result in injury. It follows that if the injury results from the natural and probable consequences of the intentional act, the subjective intent of the actor is simply immaterial — the exclusion applies."

The case of Clark v. Allstate Insurance Company, 22 Ariz. App. 601, 529 P. 2d 1195, also involved an insured intentionally striking the plaintiff in the face with his fist. The insured maintained that he had no subjective intent to injure. The court said: "The contention of young Clark [insured] that he did not intend to injure Niemi does not make the question of intention an issue of material fact which must go to

the trier of fact." The court said: "[T]he act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law."

The cases overwhelmingly indicate that an injury is "expected or intended" from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or if the character of the act is such that an intention to inflict an injury can be inferred as a matter of law. Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N. W. 2d 121 (1976).

In Iowa Kemper Ins. Co. v. Stone, 269 N. W. 2d 885 (Minn., 1978), the Minnesota court made it clear that there is no substantial distinction in meaning between policies which exclude injuries "expected or intended" and those excluding injuries "caused intentionally." The Minnesota court said: " 'Superficial analysis would suggest that this is an acceptance of the "natural consequences of the act" rule, but it is not. It is a much more narrow gauge that recognizes the correlation only where reason mandates that from the very nature of the act, harm to the injured party must have been intended. A defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly.' Home Insurance Company v. Neilsen, 332 N. E. 2d 240, 243-44 (Ind. App. 1975)."

In the case at bar the evidence established that the defendant Norval intentionally hit the plaintiff in the face with his fist. The blow knocked plaintiff unconscious and broke his jaw. To hold that under such circumstances the testimony of the insured that he did not intend to injure the plaintiff is sufficient to permit the fact finder to find that no harm to the injured party was intended, simply ignores reality.

Any reasonable analysis requires the conclusion that from the very nature of the act harm must have been intended.

Although Norval may not have intended the specific injury which resulted, such specific subjective intent is not required to exclude coverage under the policy. The "intent" which is necessary to exclude coverage is not the intent to act nor the intent to cause the specific injury. Instead it is the intent to cause bodily injury to the person acted upon and it makes no difference if the actual injury is more severe or of a different nature than the injury intended.

Where an 18-year-old man intentionally hits another person in the face with his fist, with force enough to knock the person unconscious, an intent to cause bodily injury can be inferred as a matter of law, and the subjective intent of the actor is immaterial. From the very nature of the act, no reasonable man could doubt that harm to the person struck must have been intended.

The public policy against "licensing" intentional and unlawful assault bolsters our conclusion. In the case before us the direct and inferential evidence from the very nature of the act permits only one conclusion, that Norval intended to injure the plaintiff.

The judgment of the District Court is reversed and the cause is remanded to the District Court with directions to dismiss plaintiff's petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

BRODKEY, J., dissenting.

I must respectfully part company with the majority of the court in their conclusion that as a matter of law Richard Norval intended to cause bodily injury to Samuel Jones, notwithstanding the presence of conflicting and contradictory evidence on that point in the record. Under the facts of this case a

jury question was presented which the trial judge, as the trier of facts, after hearing and observing the witnesses, believed. A closer case, factually, than those cited in the majority opinion is the case of Farmers Ins. Exchange v. Sipple, 255 N. W. 2d 373 (Minn., 1977), which case also involved conflicting evidence, which the Supreme Court of Minnesota held was properly submitted to the jury, rather than being decided as a matter of law. That case involved an assault on a farmer by the insured, a state highway department employee, who struck the farmer with his fist after becoming involved in a heated discussion with him regarding a new highway allegedly creating drainage problems for his land. The homeowner's policy issued by the insurance company in that case also contained an exclusion of "* * * bodily injury or property damage which is either expected or intended from the standpoint of the Insured." The insurance company brought the action against the insured and the party assaulted seeking a judgment determining its obligation to defend or indemnify the insured. The trial court submitted to the jury the issue of the insured's intent to injury under the exclusion clause of the policy, since the insured testified that he struck the farmer instinctively, in the form of a reflex, after the farmer had turned suddenly or advanced menacingly toward him. I quote from the opinion in that case: "The insurance company on appeal contends that the issue whether the assault by Baud upon Sipple was an intentional act was a question of law and that the trial court improperly submitted the issue of intent to the jury.

"We hold that under the particular facts of this case the trial court was correct in submitting the issue of whether the injury was either expected or intended to the jury. The facts were in dispute. Sipple testified that he had not turned suddenly nor advanced menacingly toward Baud. Baud, on the

other hand, testifies as follows: ' 'Q. What did you think when he turned around and said ["you sons of bitches"] to you? A. I didn't. It was more of a reflex. Q. Did you think he was going to attack you? A. No, not really. I don't know, it just seems like he came right to me. Q. Did it make you angry? A. I was angry, but I didn't have any intentions of hurting the man. I think he was more angry than I was. Q. You intended to hit him, but you didn't intend to hurt him? A. I did not intend to hit him. I came up and I didn't intend to hurt him. In fact, I don't think I did hurt him. Q. Did you lose control of your bodily reflexes at that point? A. If I would have lost control — Q. Did you hit him? A. Yes. Q. Did you hit him with your right hand or your left hand? A. Left hand. Q. Was your fist opened or closed? A. It was like this (indicating). Q. Are your [sic] right-handed or left-handed? A. Right-handed. Q. Were you holding anything at the time? A. No. Q. And you didn't intend to hit the man? A. That's correct. Q. This was just a reflex action over which you had no control at that point? A. Correct. Q. You think you did it because you were mad? A. No. Q. Why do you think you did it? A. Like I said, the man came at me and it was just more or less a defense. Q. Were you trying to stop him from coming at you further? A. Correct. Q. The best way to do that is to strike him in the face? A. I have never done this before, but it was one of those things.' " The court also stated that if Baud's testimony is to be believed, there is doubt he had any time to form an intent, but rather acted instinctively in the form of a reflex; and that, accordingly, the question of intent was properly presented to the jury. There is evidence in the record in the instant case, which apparently the trial judge believed, that the defendant Norval did not intend to cause harm to the plaintiff, even assuming that his act of striking the plaintiff on the face was intention-

al. Without being exhaustive, the following evidence is illustrative. As previously stated, the defendant testified in this action by deposition and also previous testimony. On recross examination in his deposition he was asked: "Q. All right, now I gather from your answers that the swing was almost contemporraneous [sic] with Mr. Jones putting his hand on your shoulder or on your arm to push, isn't that right. A. Yes. Q. Did you actually think about what you were doing or would you characterize it as an instinctive reaction, reacted without thinking about it? A. I'd say it was more of an instinctive reaction." The record also contains previous testimony of Richard Norval in the original action in the District Court for Seward County. He was asked the following questions and made the following answers: "Q. Did you expect that your action would injure him? A. No. * * * Q. Immediately before you struck him, was it your intention at that time to — try to recall what you were thinking about, did you intend to cause him any injury? A. No. Q. Did you go there with the intention that you would injure Mr. Jones? A. No."

While there is little doubt that the defendant intended to hit Jones, I believe that the question of whether he intended to cause physical harm to him was a disputed fact. In Insurance Co. of North America v. Hawkins, 197 Neb. 126, 246 N. W. 2d 878 (1976), we stated: "In a law action tried to the court without a jury, it is not within the province of this court to weigh or resolve conflicts in the evidence. The credibility of the witnesses and the weight to be given to their testimony are for the trier of fact. Snay v. Snarr, 195 Neb. 375, 238 N. W. 2d 234. The judgment of a trial court in an action at law tried to the court without a jury has the effect of a verdict of a jury and should not be set aside on appeal unless clearly wrong. Henkle & Joyce Hardware Co. v. Maco, Inc., 195 Neb. 565, 239 N. W. 2d

772." Also, in Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N. W. 2d 523 (1973), we stated: "Where evidence is conflicting, or where reasonable minds may draw different inferences or conclusions from the evidence, it is within the province of the jury or the court, when the case is tried without a jury, to decide the issues of fact, and the Supreme Court may not set aside or direct a verdict in such situation." There is evidence in the record in this case to sustain the findings of the trial court, acting as the trier of fact, and its judgment ought to be affirmed.