ALLSTATE INSURANCE COMPANY, APPELLEE, V.
SHARON NOVAK AND TONY NOVAK, APPELLANTS.

313 N.W.2d 636

Filed December 18, 1981. No. 43566.

Robert C. Wester of Schirber Law Offices, P.C., for appellants.

John P. Miller of Miller & Rowen, P.C., for appellee.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and KORTUM and GRANT, District Judges.

KRIVOSHA, C.J.

The appellants, Sharon Novak and Tony Novak, husband and wife, hereafter referred to as Novak, appeal from a declaratory judgment entered by the District Court for Sarpy County, Nebraska, holding in effect that the appellee, Allstate Insurance Company (Allstate), is neither obligated to defend Novak nor pay any judgment rendered against Novak under the terms of a certain policy of insurance issued by Allstate to Novak. We believe that the action of the trial court was in error and must be reversed.

The act which gives rise to our having to consider the applicability of the instant policy concerns an alleged assault and battery by Tony Novak against one Terry Stewart. The controversy, however, between Novak and Stewart has not, as yet, been resolved. Therefore, we are unable to know what the ultimate determination of that question will be. Our inability to know the result of that dispute is a key factor in our determination of this case.

The evidence presented to us in this case consists of the petition filed by Stewart in his case against Novak,

plus certain depositions taken in the action between Allstate and Novak. The record discloses that the occurrence giving rise to this litigation took place on September 28, 1978. At that time Stewart was helping a friend with the construction of an addition or garage to the friend's house located next to the home owned by the Novaks. Mrs. Novak, in a statement, stated that Mr. Stewart had been using abusive language toward her and that he had urinated in or near their yard in front of her. When her husband, Mr. Novak, arrived home at approximately 7:30 to 8:30 that evening, she informed him of what had taken place. According to Mrs. Novak, Mr. Novak immediately proceeded to the construction site where Mr. Stewart was working. In his deposition, Mr. Novak stated that he asked the owner of the house if his bathroom was working and why he, the owner, had allowed Mr. Stewart to urinate in his yard.

Novak further testified that at this point Stewart began to hurl obscene epithets at Novak and at the same time started moving toward him. Novak indicated that he had no idea whether Stewart had something in his fist with which he was going to strike Novak but that his tone of voice, his selection of words, and his sudden movement toward Novak led Novak to believe that Stewart was about to strike him, either with his fist or perhaps with a beer bottle.

Novak maintains that he then instinctively acted in self-defense by striking Stewart in the face. Mr. Stewart was knocked to the ground and ran away immediately after being hit.

Stewart, on the other hand, maintains by deposition that he was sitting down on the partially built wall and that he never said anything to Novak before Novak struck him. Stewart further denied that he had made any obscene comments to Mrs. Novak or had urinated in the Novak yard. The owner of the premises, in his depposition, testified that he spoke to Novak across the building but could not remember what they said. He testified that he did not know Mr. Stewart had urinated

in Novak's yard.

Thereafter, Stewart filed an action against Mr. Novak in the District Court for Sarpy County, Nebraska. In his petition he alleged that Novak "without any cause or provocation therefor . . . willfully, wantonly and maliciously struck [Stewart] from the side with great force and violence . . . ."

At the time of the alleged altercation the Novaks owned a certain policy of insurance issued by Allstate. The pertinent portion of the policy provides in part as follows: "Allstate agrees to pay on behalf of the Insured all sums which the Insured shall become *legally obligated* to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence. Allstate shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis supplied.)

The Novaks called upon Allstate to provide them with a defense to Stewart's lawsuit and to pay any sums which Novak might legally be obligated to pay because of bodily injury to Stewart. Allstate refused to either provide a defense or to pay any damages, on the basis that the action by Novak, as claimed by Stewart, was not covered by the policy. Its position was based upon an exclusion in the policy which provided in part as follows: "This policy does not apply . . . (f) to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." Specifically, Allstate maintains that by reason of our decisions in *State Farm Fire & Cas. Co. v. Muth*, 190 Neb. 248, 207 N.W.2d 364 (1973), and *Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388 (1979), it is under no obligation under the terms of the policy to either provide a defense or to pay any damages.

It occurs to us that there are two separate and distinct

obligations provided for by this contract of insurance. In the first instance, Allstate agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of bodily injury. That is one contractual obligation existing between Allstate and Novak. The second obligation, which is separate and apart from the obligation to pay, is the "right *and duty* . . . to defend any suit against the Insured." (Emphasis supplied.) See, *Satterwhite v. Stolz,* 79 N.M. 320, 442 P.2d 810 (1968); *Travelers Indemnity Company v. East,* 240 So. 2d 277 (Miss. 1970); *Yakima Cement Prod. Co. v. Great American Ins. Co.,* 14 Wash. App. 557, 544 P.2d 763 (1975).

Not only does the carrier have a right to defend but it has a corresponding duty to do so. This duty is rather broad in that the policy provides that the carrier has a duty to defend even though the suit is "groundless, false or fraudulent." That is to say, the duty to defend is greater than the obligation to pay. There is no requirement that there must be a reasonable likelihood of recovery or even a good faith claim. It is possible by reason of the language of this policy that the company may be obligated to defend a groundless, false, or fraudulent claim though it may not ultimately be required to make any payment.

We first address the question of whether we can at this time declare whether the carrier has an obligation to pay. The simple fact of the matter is that until the facts in this case are resolved the court cannot determine Allstate's obligation to pay and cannot therefore grant declaratory judgment on that question. In order to maintain an action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 (Reissue 1979), there must be an actual controversy. It cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain. There must, at the time that the declaration is sought, be an actual justiciable issue. See *Miller v. Stolinski,* 149 Neb. 679, 32 N.W.2d 199 (1948). The question now pre-

sented to us is whether we can judicially determine whether Allstate is required to make payment on behalf of Novak. However, until it is determined that Novak is legally obligated to pay Stewart, the question of Allstate's obligation is uncertain and contingent. See *Firemen's Ins. Co. of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex. 1968). Unless it can be said that Stewart is entitled to a summary judgment against Novak on his cause of action, we cannot determine Allstate's obligation to pay on behalf of Novak. Allstate does not have an obligation to pay for all acts committed by the insured even though the act by the insured may produce an injury covered by the policy. It is obligated to pay *only* if the insured becomes legally obligated to pay. Allstate, under the facts presented to the court, may never be required to pay because Novak may never become legally obligated to pay. The distinction between this case and the cases of *State Farm Fire & Cas. Co. v. Muth, supra*, and *Jones v. Norval, supra*, are significant. In both *Muth* and *Jones*, judgments were already obtained against each insured who was already legally obligated to pay before the declaratory judgment action was brought by the carrier against the insured.

We are not suggesting by this opinion that there may never be an appropriate instance where the carrier may seek declaratory relief prior to the insured's liability being ascertained. There may, indeed, be situations where the language of the policy is such that the carrier's obligation to pay can be determined even before the insured's liability is determined. See, *Gottula v. Standard Reliance Ins. Co.*, 165 Neb. 1, 84 N.W.2d 179 (1957); *Hawkeye Casualty Co. v. Stoker*, 154 Neb. 466, 48 N.W.2d 623 (1951). For example, if insured's policy in this case was an automobile policy rather than a homeowner's policy, an injury caused by an assault and battery without the use of an automobile might not be covered. The insurer could then obtain a declaration that it has no liability, even now. But such is not the

case.

The basis for deferring the question of Allstate's obligation to pay on behalf of Novak appears to us to be proper. Were we to hold otherwise we would create the anomalous situation of requiring the insured under the terms of his policy, on the one hand, to cooperate with the insurer and provide the insurer with all the information concerning the events and then, on the other hand, require the insured to defend himself against the insurer who, by using the information provided it by the insured, seeks not only to absolve itself from any obligation to the insured but, in addition, seeks to establish the insured's liability to a third person.

Allstate would argue, however, that while this position may be generally true, our decision in *Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388 (1979), establishes that there is no coverage in any case involving an intentional assault and battery as a matter of law. We do not read the *Jones* case to extend that far.

In *Jones* there was a final determination that the insured was liable for a willful and intentional assault. Specifically, we said in *Jones* at 552, 279 N.W.2d at 391: "'Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional.'" We then went on to hold that where the evidence was without dispute that the insured intentionally hit another person in the face with his fist, with force enough to knock the person unconscious, an intent to cause bodily injury could be inferred as a matter of law. Our holding in *Jones*, however, must be viewed in light of our holding in *Muth*, wherein we affirmed the trial court's finding that when the insured's son caused a gun to discharge in the direction of the injured party, he did not intend nor expect to do bodily injury to the individual. In the *Muth* case we held that the exclusionary provision of the policy did not apply and that the company was obligated to make payment because, while the firing of the gun by the child was intentional, the resulting injury was not

intentional but only negligent in that the child did not intend to strike his victim with the shot.

In the instant case there may indeed be either a complete defense to the action or a finding that while the act may be unlawful it was negligent and not intentional, thereby bringing the act within the coverage of the policy.

The California Supreme Court has specifically had an opportunity to analyze this problem when deciding the case of *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104 (1966). In the *Gray* case, one Jones filed a complaint alleging that Dr. Gray "wilfully, maliciously, brutally and intentionally assaulted him" and therefore prayed for substantial damages. Gray argued that he acted in self-defense and requested that the company defend him. The carrier maintained that it did not need to defend Gray because the complaint revealed on its face that the claimed bodily injury did not fall within the indemnification coverage. Rejecting the carrier's position and finding that there was both a duty to defend and perhaps ultimately a duty to pay, the California Supreme Court, speaking through Justice Tobriner, said at 277, 419 P.2d at 177, 54 Cal. Rptr. at 113: "Jones' complaint clearly presented the possibility that he might obtain damages that were covered by the indemnity provisions of the policy. Even conduct that is traditionally classified as 'intentional' or 'wilful' has been held to fall within indemnification coverage. Moreover, despite Jones' pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, plaintiff might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct."

In fact, Novak maintains that he acted in self-defense. If, indeed, the jury believes that he acted in self-defense his action in striking Stewart might be excused or at

least held to be negligent but not expected or intended.

A similar situation was presented to the California Court of Appeals in the case of *Walters v. American Ins. Co.*, 185 Cal. App. 2d 776, 783, 8 Cal. Rptr. 665, 670 (1960), where the court there noted: "'A "wilful act" as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence.' A contention that it meant simply an act performed intentionally was rejected. If plaintiff acted in self-defense then although he 'intended the act,' plaintiff acted by chance and without a preconceived design to inflict injury just as though he were acting intentionally, although negligently, and injured someone."

"It is now settled that injuries resulting from acts committed by an insured in self-defense are not 'intended' or 'expected' within the meaning of those terms as customarily used in an exclusionary clause like the one involved in the present case." *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3rd 163, 170, 140 Cal. Rptr. 605, 609 (1977). See, also, *Walters v. American Ins. Co.*, *supra; Lowell v. Maryland Casualty Co.*, 65 Cal. 2d 298, 419 P.2d 180, 54 Cal. Rptr. 116 (1966); *Meyer v. Pacific Employers Ins. Co.*, 233 Cal. App. 2d 321, 43 Cal. Rptr. 542 (1965). In *Mullen v. Glens Falls Ins. Co.*, *supra* at 171, 140 Cal. Rptr. at 610, the court there went on to note as follows: "It is possible that an act of the insured may carry out his 'intention' and also cause unintended harm. [Citations omitted.] Self-defense is an excellent example. [Citations omitted.] Further, an insured might be able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit willful and intended injury, but engaged only in nonintentional tortious conduct."

The cases, as evidenced by those already cited, point out that when one acts in self-defense the actor is not generally acting for the purpose of intending any injury

to another but, rather, is acting for the purpose of attempting to prevent injury to himself. It can easily be said that such act, though resulting in bodily injury to another, was neither expected nor intended within the terms of the policy. What was expected or intended was that there be no injury to the actor. It appears clear to us that unless and until a final determination is in fact made that Novak is legally obligated to pay and the basis for that obligation is determined, the question of Allstate's obligation to pay on behalf of Novak cannot be decided. An injury resulting from an act committed by an insured in self-defense is not, as a matter of law, an expected or intended act within the meaning of a policy of insurance exempting bodily injuries or property damages which are either expected or intended from the standpoint of the insured.

That leaves us then with but one further question to resolve. That question is whether Allstate has an obligation to defend Novak and, if so, how and when that obligation is determined. It would appear to follow, in the natural course of events, that because of what we have said concerning Allstate's possible obligation to pay in this case, when viewed in light of Allstate's contractual duty to defend even false, fradulent, or groundless suits, Allstate does have an obligation to defend this case even though it may not ultimately have an obligation to pay. Allstate would argue that it has no duty to defend because the petition filed by Stewart against Novak shows on its face that it is a suit based upon assault and battery and therefore outside the terms of the policy. There are cases that can be found, including cases within our own jurisdiction, which say that the insurer may look only to the petition or complaint to determine whether it has an obligation to defend, and if the complaint or petition on its face alleges facts which bring the action within an exclusion of the policy there is no obligation to defend. We believe that those cases are not based upon sound reasoning nor recognize the reality of today's litigation. A plaintiff may plead

anything he desires. Should we then leave the insured to his own defense based upon what the suing party claims, or should we require the carrier to examine all the facts to determine whether there is the possibility of coverage under the policy? We believe that the better reasoned cases support the latter view and are correct. In *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 276-77, 419 P.2d 168, 176-77, 54 Cal. Rptr. 104, 112-13 (1966), the California court noted: "To restrict the defense obligation of the insurer to the precise language of the pleading would not only ignore the thrust of the cases but would create an anomaly for the insured. . . .

"Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. In the instant case the complaint itself, as well as the facts known to the insurer, sufficiently apprised the insurer of these possibilities; hence we need not set out when and upon what other occasions the duty of the insurer to ascertain such possibilities otherwise arises."

To the same effect see *Healy Tibbitts Const. Co. v. Foremost Ins. Co.*, 482 F. Supp. 830 (N.D. Cal. 1979).

To hold otherwise would be to totally ignore the reality of the situation. The insured's basis for defending may involve an affirmative defense such as in the instant case, which can only be raised in the answer. To therefore suggest that the carrier only looks to the petition and ignores the fact that there is a justifiable, valid, and legal defense to the claim would be to entrust a third party with the determination of whether the insured should get that which the insured bargained for and which the insured is entitled to receive, to wit, a defense. We would not support such a view. We perceive of no reason why the carrier might be required to defend a false, fraudulent, or groundless suit but not be

required to defend a suit in which the insured has a valid defense. We therefore believe that the position taken by the California court requiring the insurer to not only view the petition but to likewise make investigation and ascertain facts from all available sources in order to determine its obligation to defend is the more appropriate rule. An insurer has a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. The insurer may not confine its investigation to the allegations of the petition filed by the party claiming damages.

Based upon the evidence presented to us at this juncture, it appears clear that the insured may have a valid defense or may only be liable for negligence. In either event the action would be covered by the policy, and therefore the carrier has a duty to defend.

The judgment of the trial court is reversed and remanded with instructions to enter a judgment in accordance with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.