694 P.2d 191

**FIRE INSURANCE EXCHANGE, a reciprocal or interinsurance exchange, Plaintiff-Appellee,**

v.

**Tom BERRAY and Bonnie Berray, husband and wife, Defendants-Appellants.**

No. 16564–PR.

Supreme Court of Arizona, En Banc.

Dec. 20, 1984.

Johnson, Jessen, Dake & Oplinger by James E. Vieh, Phoenix, for plaintiff-appellee.

Cox & Cox, Stephen L. Cox, Phoenix, for defendants-appellants.

FELDMAN, Justice.

Fire Insurance Exchange petitions this court for review of the majority decision of the court of appeals (*Fire Insurance Exchange v. Berray*, 143 Ariz. 429, 694 P.2d 259 (1983)), which found that Fire Insurance Exchange had a duty to defend its insured, Tom Berray, in a tort action brought against Berray by Raul Rodriguez. We have jurisdiction under Ariz.Const., art. 6, § 5(3) and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.; we granted review in this case and in *Transamerica Insurance Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1983) to settle a conflict in the decisions of the court of appeals (Rule 23(c)(4)) concerning the scope of the intentional act exclusion. See *Lockhart v. Allstate Insurance Co.*, 119 Ariz. 150, 579 P.2d 1120 (1978).

## FACTS

At mid-afternoon on April 9, 1980 defendant and Raul "Rudy" Rodriguez left Berray's place of employment in Phoenix, Arizona to play pool at a bar across the street. They played pool, betting on the outcomes, into the evening. They bet substantial sums and a dispute arose concerning the bets. They left the bar separately and drove away in their respective vehicles. At the intersection of Grand and 19th Avenues both stopped at a red light. Rodriguez caught Berray's attention and the two exchanged words. They agreed to pull into a vacant service station to further discuss their disagreement. According to Berray's deposition, Rodriguez punched him in the face causing him to bleed and fall against his van. Berray got up and, after a moment, began to straighten his glasses. Rodriguez grabbed the glasses and threw them to the ground. Rodriguez then hit Berray, knocking him against the step of his van and causing the back of Berray's head to bleed. Seeking to avoid the blows, Berray clambered into his van, kicking at Rodriguez. Lying across the front seat, Berray grabbed a .357 Magnum from the backseat. He turned, pointed the gun at Rodriguez, and told him to get away.

> At that point he [Rodriguez] took a step towards me and I just fired. Aimed and, you know, I just fired the gun.
> Q. But you fired it in his direction?
> A. Yes.
> Q. Would it be fair to say that after this assault on you, that you were fearful for your life?
> A. Very definitely.

Berray deposition, p. 26.

Rodriguez sustained serious injuries and filed a tort action against Berray, alleging in Count IV

> That on or about April 11, 1980, the plaintiff Raul Rodriguez, received grievous bodily injury as a result of grossly negligent and/or willful and wanton and/or malicious assault and battery by the defendant with a deadly weapon....

And in Count VII: .

> That as a direct and proximate result of the grossly negligent, intentional, willful, wanton and malicious conduct of the defendant, plaintiff is entitled to punitive damages....

Berray's contention is that the shooting was essentially a reflex reaction undertaken in self-defense.

Q. All right. Did you at that time consciously decide that you were going to shoot Rudy?

A. I don't believe I ever done that. Just a reaction.

\*     \*     \*     \*     \*     \*

Q. All right. Did you ever at anytime intend to shoot Rudy?

A. Prior to the happening?

Q. Yes. Before the firearm went off, did you intend to shoot Rudy?

A. No.

Q. Did you intend to kill him?

A. No way.

Q. Did you want to?

A. No way.

\*     \*     \*     \*     \*     \*

Q. Really, did you ever really intend to shoot Rudy?

A. I never really intended to shoot Rudy, you know, until it happened.

Q. So it was just some sort of a reflex?

A. When he came at me, definitely.
[Berray deposition pp. 48–50, 56]

## THE COVERAGE

At the time of the incident Berray was insured under a homeowner's liability policy issued by Fire Insurance Exchange, a division of Farmers Insurance Group. Berray tendered the defense to Fire Insurance Exchange. The policy provides coverage for "all damages from an accident which an insured is legally obligated to pay because of bodily injury or property damage covered by this policy." Fire Insurance Exchange initiated this declaratory judgment action, claiming that an "intentional acts" exclusion in the policy relieved it from the "duty to defend" Berray in the underlying action brought by Rodriguez. The exclusion states:

We do not cover bodily injury or property damage:

\*     \*     \*     \*     \*     \*

3. Arising as a result of intentional acts of an insured.

The trial court entered summary judgment in favor of Fire Insurance Exchange. The court of appeals reversed, one judge dissenting. *Fire Insurance Exchange v. Berray, supra.* The majority found that the only inference to be drawn from Berray's testimony concerning his conduct in aiming a loaded gun and pulling the trigger was that he "intended the resulting harm despite his statements to the contrary." *Id.* at 431, 694 P.2d at 261. We agree with regard to the insured's immediate intent. With respect to the immediate intent which accompanies the intentional act, the conclusion of the trial court was consistent with *Steinmetz v. National American Insurance Co.,* 121 Ariz. 268, 589 P.2d 911 (App.1978) and *Clark v. Allstate Insurance Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975). However, as we stated in *Meere,* 143 Ariz. at 358, 694 P.2d at 188, the *Steinmetz-Clark* presumption does not apply to the language of an "intentional acts" exclusion clause when an insured acts in self-defense or with some other justification. In such cases, the question of intent must be resolved by a determination of the basic purpose or desire underlying the insured's conduct. 143 Ariz. at 359–360, 694 P.2d at 189–190; *Allstate Insurance Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981); *see also Farmers Insurance Company of Arizona v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983). We therefore agree also with the conclusion of the court of appeals "that an act committed in self-defense should not be considered an 'intentional act' within the meaning of the exclusion." *Berray,* 143 Ariz. at 431, 694 P.2d at 261. As the court of appeals explained

> [w]hile the act of shooting a person in self-defense is intentional in a narrow sense, in a broader sense it is not. One confronted with the need to defend himself has had the situation thrust upon him and matters have progressed to a point where action is his only resort. There is a close similarity between such

a circumstance and events that we think of as conventional accidents.

143 Ariz. at 431–432, 694 P.2d at 261–262. *See also Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373 (Minn.1977); *Jones v. Norval,* 203 Neb. 549, 556–58, 279 N.W.2d 388, 392–93 (1979) (Brodkey, J., dissenting). To the extent that it reaches a contrary conclusion, *Lockhart v. Allstate Insurance Co., supra,* is disapproved.

■ We note that unlike the policy exclusion in *Transamerica Insurance Group v. Meere, supra,* the exclusion in the case at bench focuses on whether the insured intended the *act* and not on whether the insured intended or expected to cause injury. However, the policy at issue here defines an accident or occurrence—for which coverage is extended—as "a sudden event ... resulting in bodily injury ... *neither expected nor intended* by the insured" (emphasis supplied). Thus, the exclusion clause, when read in conjunction with the coverage clause for bodily injury and the policy's definition of an "accident," has the same effect as in *Meere.* The exclusion and coverage provisions, here as in *Meere* and *Vagnozzi,* extend coverage unless, from the standpoint of the insured, the insured inflicts injury which is either "expected or intended." Therefore, the same principles govern both cases. See *Patrons-Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888, 890–91 (Me.1981) (containing a brief history and analysis of the language in exclusion clauses such as that in the case at bench). The standard exclusion clause for intentional acts, part of the 1966 revision of the standard policy, was not designed to increase the scope of the exclusion. It is properly to be interpreted as excluding coverage for the injury that the insured "subjectively wanted" to result from his conduct. *Id.* at 892.

■ *Patrons-Oxford* involved a collateral estoppel issue, but the distinction that it draws between "intent" in tort or criminal actions, on the one hand, and "intent" in intentional act exclusion clauses, on the other, is well recognized.

"[I]ntent" in an action for assault requires merely that the defendant intend to do the wrongful act. *See* W. Prosser, *The Law of Torts* (3d ed. 1964) § 8 at 31. In order to constitute "intent" in an intentional acts exclusion or in the definition of occurrence, however, the insured must desire to harm the plaintiff. 11 Couch on Insurance 2d § 44:289 (Rev.ed. 1982). Thus a finding in the underlying tort action that the insured intended to assault the plaintiff should not be determinative of the coverage issue.

Berg, "Losing Control of the Defense—The Insured's Right to Select His Own Counsel," 26 *For the Defense* (No. 7) 10, 16 (July 1984) (Defense Research Institute). The exclusion applies when the insured's subjective or basic desire was to cause some harm to the plaintiff.

■ Taken at their strongest, the facts suggest that Rodriguez's physical attack upon Berray was a sudden event. Berray retreated and was pursued. He groped for his gun, removed it from a holster, turned and fired. He intended to fire the weapon. He sought to prevent further injury to himself from his attacker. As in *Meere, supra,* and *Vagnozzi, supra,* these facts, if proven, create a genuine issue concerning Berray's basic, subjective intent. Since that intent is "material," the issue must be resolved by the trier of fact. The answer cannot be supplied by focusing only upon the single act of the insured in firing the pistol but must be found by examining the totality of the circumstances surrounding that act.

As modified by this opinion, the opinion of the court of appeals is approved. The entry of summary judgment in favor of Fire Insurance Exchange is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

The homeowner's policy of the insured Berray contained the following:

We do not cover direct or indirect loss from:

6. The result of intentional acts of an insured.

Finding the language subject to more than one interpretation, the Court of Appeals held that there was coverage when the insured acted in self-defense. Court of Appeals, 143 Ariz. at 433, 694 P.2d at 263. The majority in this court chose to decide the case on the basis of the reasoning in *Transamerica Insurance Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1984).

The majority conclude that the policy definition of accident or occurrence as "a sudden event ... resulting in bodily injury ... neither expected nor intended by the insured" when read in conjunction with the exclusion clause has the same effect as the provision in *Meere*, 143 Ariz. at 355, 694 P.2d at 185. This verbal circumlocution which uses the general to negate the specific, at least, makes interesting reading.

The attempts by the insurer to use simple, understandable language in the policy exclusion at issue has fallen victim to judicial construction.

For the reasons stated in *Meere* I also dissent in this case.