### NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Plaintiff,

v.

### Walter Shane MITCHELL, By and Through his mother, Lana Ree SEYMOUR, Defendant.

### Civil A. No. 1:95cv322GR.

United States District Court, S.D. Mississippi, Southern Division.

Oct. 31, 1995.

Peter C. Abide, Compton, Crowell & Hewitt, Biloxi, MS, for plaintiff.

### MEMORANDUM OPINION

GEX, District Judge.

This cause comes before the Court on the motion for summary judgment [4–1] and motion for default judgment [6–1], filed by the plaintiff, Nationwide Mutual Fire Insurance Company [Nationwide]. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds that Nationwide's motion for summary judgment should granted, and motion for default judgment should be denied as moot.

### Statement of Facts

The instant controversy stems from a domestic dispute turned violent, which occurred at the residence of the insured, Walter Seymour [Walter]. At the time of the altercation, Walter was married to Lana Ree Seymour [Lana]. The defendant's uncontested itemization of facts and supporting documents indicate that, on October 7, 1994, Walter's ex-wife, Shirley Seymour [Shirley], pulled up in front of Walter's home in her car. An argument arose between Walter and Shirley (who remained in her car) about the time that Lana's son and Walter's stepson, sixteen-year-old Walter Shane Mitchell [Shane], walked outside with his girlfriend, intending to go to a homecoming dance. Shane's mother, Lana, went over and joined in the argument while Shane watched from the car where he was seated with his girlfriend. The ongoing argument between Walter, Lana, and Shirley became more intense. Shane observed Shirley get out of her car and approach his mother. Shane then got out of his car and jogged across the yard to get between them. When Shane saw Shirley push his mother, he moved in and struck Shirley on the left side of her head with his fist. Shirley was knocked to the ground by the force of the blow and suffered severe injuries to her face, eye, skull, jaw, and cheek. *See* Def.'s Item. of Material Facts not in Dispute [Item.], ¶¶ 1–8; Def.'s Mot. for

Summ.J., attached exhibits.[1]

Shirley subsequently filed a personal injury claim against Shane and demanded payment of policy limits from a homeowner's insurance policy issued by Nationwide to Shane's stepfather, Walter, which covered Shane as a resident relative of Walter's household. *See* Def.'s Mot. for Summ.J., Exh. A (complaint for declaratory judgment). The policy at issue contained an exclusion from personal liability for personal injury or medical payments if the bodily injury was:

> caused intentionally by or at direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct.

*See id.,* Exh. A; Nationwide Homeowner's Policy, Amend.Endors.Fire 3191 (8–91) at 4 (emphasis omitted). On June 16, 1995, Nationwide filed the instant complaint for a declaratory judgment that the defendant insured is not entitled to coverage in light of the foregoing policy exclusion. Following the defendant's failure to file an answer, Nationwide filed a motion for summary judgment and a motion for default judgment on September 1, 1995. The defendant has neither filed an answer nor responded to Nationwide's motions.

### Standard of Review

Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted); *see Berry v. Armstrong Rubber Co.,* 780 F.Supp. 1097, 1099 (S.D.Miss.1991), *affirmed,* 989 F.2d 822 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

The failure of a party to respond to a motion for summary judgment does not automatically entitle the moving party to summary judgment. *See John v. State of Louisiana Bd. of Trustees for State Colleges and Univs.,* 757 F.2d 698, 709–10 (5th Cir. 1985). If the movant has not satisfied its initial burden, the nonmovant need not respond at all. *Id.* However, if the movant has met its burden, "the nonmovant cannot survive the motion by resting on the mere allegations of its pleadings." *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186 (5th Cir.) (citations omitted), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). When there is a wholly nonresponsive party, the Court looks to the evidence presented by the moving party to see if the moving party has met its substantive burden under Rule 56. *Smith v. Alumax Extrusions, Inc.,* 868 F.2d 1469, 1472 (5th Cir. 1989). If the party has satisfied its burden, the Court may rule on the merits and grant summary judgment as opposed to default judgment. *Id.*[2]

### Legal Analysis

This Court applies Mississippi law in deciding the legal issues in this lawsuit, filed pursuant to this Court's diversity jurisdiction. *Batts v. Tow–Motor Forklift Co.,* 978 F.2d 1386, 1389 (5th Cir.1992) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

---

1. Nationwide's exhibits in support of its motion for summary judgment are labeled redundantly. There are two exhibits marked "A," i.e., Nationwide's Homeowner Policy and Nationwide's complaint for declaratory judgment, two exhibits marked "B," i.e., the police report and excerpts from Shane's deposition, and two exhibits marked "C," i.e., a letter from Shirley's attorney to Nationwide and excerpts from Lana's deposition. The Court will hereinafter further clarify which exhibits are cited.

2. "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank Ocala v. Pelican Homestead & Sav. Assoc.,* 874 F.2d 274, 276 (5th Cir.1989) (citations omitted). "[T]hey are available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citations and internal quotation omitted; emphasis added); *see* FED. R.CIV.P. 55.

L.Ed. 1188 (1938)). In deciding how Mississippi courts would resolve an issue of law, Judge Davidson in the Northern District of Mississippi noted the following:

> While it is not the province of this court to create new law for Mississippi, *Green v. Amerada–Hess Corp.*, 612 F.2d 212 (5th Cir.1980), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980), the court is permitted to "reach the decision we think a state court would reach." *DiPascal v. New York Life Ins. Co.*, 749 F.2d 255, 260 (5th Cir.1985). Additionally, as the Fifth Circuit has recently cautioned, in the *Erie* context: "We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best." [emphasis omitted] *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986).

*Laws v. Aetna Finance Co.*, 667 F.Supp. 342, 344 (N.D.Miss.1987). In determining how the Mississippi Supreme Court would decide a disputed issue not expressly ruled upon, federal courts look, *inter alia*, to supreme court *dicta*, general common law, and decisions of other states to which the supreme court would look for guidance in making its decisions. *See id.* at 344–45.

In *Southern Farm Bureau Casualty Ins. Co. v. Allard*, 611 So.2d 966 (Miss.1992), the insured's brother-in-law was injured when the insured fired a shotgun "to bring [him] to his senses" and the brother-in-law stepped into the line of fire. *Id.* at 968. A factual issue arose whether the shooting was an intentional act sufficient to trigger the intentional-act exclusion clause in the insured's homeowner's insurance policy. *Id.* The jury found that the insured did not intentionally shoot his brother-in-law in the foot, and the Mississippi Supreme Court affirmed. *Id.* at 968–69. The Mississippi Supreme Court, relying on precedent, found that " '[a]n act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it.' " *Id.* at 968 (citing *Coleman v. Sanford*, 521 So.2d 876, 878 (Miss.1988)). The court further found that " 'an intentional tort is an act of intentional behavior designed to bring about the injury.' " *Id.* (citing *Stevens v. FMC Corp.*, 515 So.2d 928, 931 (Miss. 1987)).

■ The Court finds that the record clearly establishes that Shane's blow to the victim was an intentional act. Shane's mother testified on deposition as follows:

> [A]fter she [the victim] pushed me and my husband hollered, "no Shane," *I knew what was coming, because she has threatened us and harassed us so much in the last four years that I knew he had this anger built up in him, you know, against her because she has done so much to us.* So I jumped up in between them to prevent it. I mean, I jumped as high as I could, and still he come over and hit her, and I was knocked down in the process.

Def.'s Mot. for Summ.J., Exh. C (Lana's Depo.), at 18 (emphasis added). Shane's hostility toward Shirley is supported by his own deposition testimony, in which he recounts her previous threats, his mother's desire to avoid a violent confrontation because it "wasn't worth it," and his mistrust of Shirley because of his belief that she had tried to kill herself and might also try to kill his mother. *Id.*, Exh. B. (Shane's Depo.), at 4–12. Shane testified that, because he did not trust Shirley, he waited in the car, listening with his car window cracked, to intervene in any possible altercation. *Id.* at 9–10. Shane further testified that, although he "blacked out" and could not remember his fist actually contacting Shirley's face, he knew that he had punched her. *Id.* at 11–12.

Although the Court has not unearthed any Mississippi case involving facts presented in this controversy, Mississippi courts are guided by ample persuasive authority that demonstrates that Shane's decision to intervene in the altercation between the victim and his mother by punching her in the face was an intentional act. *See Simpson v. Angel*, 598 So.2d 584 (La.Ct.App.) (two punches by minor assailant, allegedly in self-defense, resulting in fracture of eye and facial bones of minor victim, an intentional act for purposes of policy exclusion because act was reasonably calculated to cause bodily harm), *writ denied*, 605 So.2d 1091 (La.1992); *Cavalier v. Suberville*, 592 So.2d 506 (La.Ct.App.1991)

(single punch, in retaliation for previous wrongs, resulting in fracture of several facial bones, was intentional because anyone would reasonably expect the act to result in injury), *writ denied,* 594 So.2d 1318 (La.1992); *Fire Ins. Exchange v. Altieri,* 235 Cal.App.3d 1352, 1 Cal.Rptr.2d 360 (1991) (assaulting victim from behind by pulling his hair and punching him without any legal justification an uninsurable, willful act); *Maxson v. Farmers Ins. of Idaho, Inc.,* 695 P.2d 428 (Idaho App.1985) (when assailant initiated barroom confrontation and punched victim in face, only reasonable inference was that act was intended to cause injury within meaning of policy exclusion).

In *Fire Ins. Exchange v. Berray,* 143 Ariz. 361, 694 P.2d 191 (1984) (*en banc*), which involved a similar intentional-act exclusion, the Arizona Supreme Court, affirming the lower court, held that "an act committed in self-defense should not be considered an 'intentional act' within the meaning of the exclusion." *Id.* 694 P.2d at 193 (citation omitted). The court further adopted the view that "[t]here is a close link between such a circumstance and events that we think of as a conventional accident." *Id.* 694 P.2d at 193–94 (citation and internal quotation omitted). It is clear from the record that Shane did not strike the victim in self-defense, but that he did so in defense of his mother. In any event, even if Shane's actions could be taken to fall within the self-defense exception, the Court need not apply the exception. It appears that the majority view does not allow self-defense as an exception to a policy's intentional-act exclusion when a punch, as here, is thrown with a purpose to injure. *See e.g., State Farm Fire and Casualty Co., v. Caldwell,* 630 So.2d 668, 669 (Fla.App.1994). In *Caldwell,* the court held that the intent to injure was established when the insured punched his menacing guest's head with enough force to break the guest's nose and cheekbone. *Id.*

Other courts hold that an act is not unintentional just because the harm actually resulting from the deliberate act was greater than expected or intended by the assailant. *See Simpson,* 598 So.2d at 585; *Cavalier,* 592 So.2d at 507; *Jones v. Norval,* 203 Neb. 549,

279 N.W.2d 388, 392 (1979); *see also Caldwell, supra,* 630 So.2d at 669 (legal distinction between an act and its anticipated consequences "would allow all manner of persons engaging in intentional acts to escape accountability for those acts simply by disclaiming any intent to achieve the precise result that occurred"). Further, that the act was impulsive or caused by blind rage or a buildup of tensions from past incidents does not render the act unintentional. *See Cavalier,* 592 So.2d at 507.

In *Republic Ins. Co. v. Feidler,* 178 Ariz. 528, 875 P.2d 187 (App.1993), *review denied,* (June 21, 1994), the court noted that an act may be rendered unintentional within the meaning of a policy exclusion for intentional acts when the insured suffered from a "derangement of the intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition [acted] on an irrational impulse." *Id.* 875 P.2d at 191. Specifically, the court was applying the principle to the effects of voluntary intoxication. *See id.* Although this Court doubts that such would be the law of Mississippi, *see Coleman,* 521 So.2d at 878 (rejecting argument that insured was so intoxicated that he could not form requisite intent to commit intentional tort); *cf. Lanier v. State,* 533 So.2d 473 (Miss.1988) (voluntary intoxication not a defense to a specific intent crime); *McDaniel v. State,* 356 So.2d 1151 (Miss.1978) (same), the Court finds that the exception would not, in any event, be availing. The record does not reasonably show that Shane's actions were the result of intoxication, a deranged state of mind, or an involuntary impulse.

The *Feidler* court, *supra,* held that "a conclusive presumption of intent to injure arises when the insured commits an act virtually certain to cause injury." *Feidler,* 875 P.2d at 190 (attack with a knife). Further, in cases when severe injury has been inflicted by a blow, as here, the very nature of the act demonstrates that harm "must have been intended." *See Jones,* 279 N.W.2d at 390–91 (when insured hits victim hard enough to break jaw and render him unconscious, the insured "must be said to expect or intend the natural, normal consequences of his own in-

tentional act"). The Court need not rely on the degree of injury to find that Shane's punch was delivered with intent to do harm. The Court holds that, under Mississippi law, Shane's single blow to the victim, which resulted in substantial injuries, was an intentional act within the meaning of the Nationwide policy exclusion.[3]

### Conclusion

For reasons set forth above, the Court finds that Nationwide has met its burden that no material issues of fact exist and that summary judgment is warranted as a matter of law. The record establishes that the insured's single blow to the victim was an intentional act within the meaning of the Nationwide policy exclusion. Accordingly, the Court finds that Nationwide's motion for summary judgment should be granted. The Court further finds that, although there is a sufficient basis for granting default judgment, Nationwide's motion for default judgment should be denied as moot in light of the Court's disposition on the merits. A declaratory judgment in conformity with and incorporating this opinion shall issue this date.

---

**3.** The extent of the victim's injuries are set forth by a letter to Nationwide from her attorney, who, referring to medical records, details that Shane's single blow to the victim rendered her unconscious and resulted, *inter alia*, in numerous facial fractures, a deep laceration in her left check, and a torn and detached left retina. Def.'s Mot. for Summ.J., Exh. C (letter by Mark S. Larson, dated May 16, 1995). Although the medical reports are not attached, the seriousness of the victim's injuries are reflected in the police report. *Id.* at Exh. B; Long Beach Police Department Police Report (victim sitting in her car holding bloody towel, left eye swollen shut and bleeding; advised to go to hospital and check for facial fractures).