Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

U.S. SPECIALTY INSURANCE COMPANY,
A CORPORATION, APPELLEE, V.
D S AVIONICS UNLIMITED
LLC, APPELLANT.

___ N.W.2d ___

Filed October 19, 2018.    No. S-17-1101.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Declaratory Judgments.** Whether to entertain an action for declaratory judgment is within the discretion of the trial court.

3. **Declaratory Judgments: Justiciable Issues.** The existence of a justiciable issue is a fundamental requirement to a court's exercise of its discretion to grant declaratory relief.

4. **Declaratory Judgments: Justiciable Issues: Words and Phrases.** A "justiciable issue" needed for declaratory judgment requires a present substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

5. **Actions: Declaratory Judgments: Parties: Judges: Jurisdiction.** A declaratory judgment action will not be entertained if there is pending, at the time of the commencement of the declaratory action, another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the same identical issues that are involved in the declaratory action. A court abuses its discretion when it entertains jurisdiction over a declaratory judgment action in such a situation.

6. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue

regarding any material fact or the ultimate inferences that may be drawn from those facts and the moving party is entitled to judgment as a matter of law.

7. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

8. **Declaratory Judgments.** Declaratory judgment cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain.

9. \_\_\_\_. A declaratory judgment action cannot be used to adjudicate hypothetical or speculative situations which may never come to pass.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Reversed.

Thomas M. Locher, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellant.

Robert E. O'Connor, Jr., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and JOHNSON, District Judge.

JOHNSON, District Judge.

D S Avionics Unlimited LLC (DSA) presented a theft claim under the physical damage coverage of an aircraft policy. The insurer denied coverage, then filed a declaratory judgment action seeking a determination that DSA's theft claim was not covered under the policy. The district court granted summary judgment in favor of the insurer, and DSA appeals. Because we conclude the district court abused its discretion in issuing declaratory relief on this record, we reverse.

## BACKGROUND

At all relevant times, U.S. Specialty Insurance Company (USSIC) insured a 1964 Piper PA-30 aircraft owned by DSA. The agreed-upon value of the insured aircraft is $50,000. In November 2014, George Babcock, an authorized agent of

DSA, delivered the aircraft to Trey M. O'Daniel, a mechanic, for maintenance. O'Daniel operated his business from an airport hangar in Omaha, Nebraska, rented from the airport's owner, Keith B. Edquist.

In late November 2014, O'Daniel was notified that the hangar would no longer be available to him as of December 1. O'Daniel removed his belongings from the hangar, but DSA's aircraft remained in the hangar after December 1.

On December 2, 2014, O'Daniel returned to the hangar to remove DSA's aircraft and discovered the lock had been changed. With the help of an adjacent property owner, O'Daniel was able to access the hangar and move the aircraft onto the tarmac. Because O'Daniel was not authorized to fly the aircraft, he left it parked on the tarmac and advised Babcock where the aircraft could be found.

According to the record, DSA did not attempt to recover the aircraft until December 11, 2014. On that day, Babcock told O'Daniel to prepare the aircraft for flight on December 12. When O'Daniel went to the airport to verify the airworthiness of the aircraft, he discovered Edquist's plow truck was parked in front of the aircraft, blocking it. Edquist told O'Daniel he would not allow the airplane to be moved unless O'Daniel paid him a specified sum of money. It is clear that parking the truck in front of the aircraft was done intentionally to block its removal.

On December 12, 2014, after learning the aircraft was blocked by Edquist's truck and could not be flown away, Babcock met with a deputy from the Douglas County sheriff's office. The deputy told Babcock it would be lawful to hire a tow truck to move Edquist's truck, but advised that doing so might create the potential for a "violent breach of peace." Babcock decided not to hire a tow truck, and left the aircraft on the tarmac blocked by Edquist's truck. At some point between December 12 and 17, Edquist moved the aircraft from the tarmac into a hangar at the Omaha airport. Babcock was advised of this.

On December 17, 2014, Babcock reported the aircraft stolen. The same day, Babcock sent a letter to Edquist demanding that the aircraft be released. When contacted by law enforcement, Edquist said the aircraft would be released only if he was paid $1,750. Babcock refused to pay. Later that day, Edquist's attorney told law enforcement and Babcock that Edquist would release the aircraft if paid $340, which he claimed pursuant to Neb. Rev. Stat. § 52-601.01 (Reissue 2010). That statute applies to persons who "shall perform work or labor, or exert care or diligence, or who shall advance money or material upon personal property under a contract, expressed or implied."[1] After reviewing § 52-601.01, Babcock refused to make payment.

On December 18, 2014, law enforcement concluded no crime had been committed and advised Babcock the issues involving the aircraft were "civil" in nature. Later that day, Edquist told O'Daniel he would release the aircraft if paid $1,760. On December 20, Edquist again told Babcock the aircraft would be released if an unspecified amount of money were paid. On January 12, 2015, Edquist told O'Daniel he would release the aircraft for a $500 storage fee if paid by January 13 and for a $600 storage fee if paid at a later date.

On February 12, 2015, Edquist told Babcock the aircraft was being moved from the hangar and would be placed outside. Edquist demanded a sum of money, which Babcock refused to pay. On February 14, Edquist made another demand for payment of the "storage" bill, and Babcock again refused to pay.

## USSIC Denies Claim

On February 18, 2015, on DSA's behalf, Babcock submitted a sworn "Proof of Loss" to USSIC, reporting that "[a] theft loss occurred on or about the 11th day of December, 2014."

---

[1] § 52-601.01.

Babcock claimed the loss was caused by the "unlawful seizure, distraint, conversion, and theft of the aircraft." He claimed the amount of the loss was $50,000—the full insured value of the aircraft.

USSIC investigated DSA's theft claim and, in a letter dated April 21, 2015, denied coverage, explaining:

> You know where the plane is, who has it, and why they have it. There has been no damage to the aircraft, it sits in a hanger [sic]. Apparently law enforcement in Douglas County has determined that it is a civil matter. Yet, you have taken no action against O'Daniel.
>
> The facts as you have described them in your claim and claim summary, are not covered by your policy of insurance. Specifically your policy contains the following provisions applicable to your claim:
>
> 1. What We Cover
>
> a. Coverage F covers direct physical loss of or damage to your aircraft caused by an accident while the aircraft is not in motion.
>
> l. Accident means a sudden event during the policy period, neither expected nor intended by you, that involves your aircraft and causes physical damage to or loss of the aircraft during the policy period.
>
> . . . .
>
> 4. What We Will Not Pay
>
> We will not pay for physical loss of or damage to your aircraft:
>
> . . . .
>
> h. *Embezzlement, Conversion or Secretion*
>
> If anyone to whom you relinquish possession of the aircraft embezzles, converts or secretes [sic] the aircraft.
>
> We also will not pay for depreciation, loss of use, loss of profits, loss of guaranty or warranty, or any other economic or consequential damage of any kind.

(Emphasis omitted.)

USSIC Files Declaratory
Judgment Action

In August 2015, USSIC filed a declaratory judgment action against DSA in the district court for Douglas County, Nebraska, seeking a declaration of noncoverage. DSA counterclaimed, seeking a declaration of coverage and alleging breach of contract and bad faith. Both parties moved for summary judgment.

A hearing was held, and during the presentation of evidence and argument, the court reserved ruling on objections to numerous exhibits. After the hearing, the court entered an order granting summary judgment in favor of USSIC on the coverage question and denying DSA's summary judgment motion. Summarized, the district court concluded DSA's claim was not covered under the physical damage coverage of the applicable policy. The court found that the undisputed evidence showed the aircraft was "being held by . . . Edquist under demand of payment" and that thus, there had been no "accident" within the meaning of the policy. The court also found the conversion exclusion applied.

Thereafter, DSA filed a motion to alter or amend the judgment. DSA asked the court to include in the judgment its rulings on exhibits on which the court previously had reserved ruling. DSA also asked the court to reverse its decision and instead enter summary judgment in favor of DSA. The district court granted DSA's first request and made express evidentiary rulings on the exhibits, but denied DSA's request to reverse the summary judgment rulings.

DSA timely appealed, and we moved the case to our docket on our own motion.[2]

ASSIGNMENTS OF ERROR

DSA assigns, combined and restated, that the district court erred in (1) sustaining USSIC's motion for summary judgment,

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

(2) overruling DSA's motion for summary judgment, and (3) admitting and excluding certain evidence and argument at the summary judgment hearing.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[3]

[2] Whether to entertain an action for declaratory judgment is within the discretion of the trial court.[4]

## ANALYSIS

The procedural posture of this case affects the resolution of the appeal. Here, the district court (1) entertained USSIC's action for declaratory relief and (2) granted summary judgment in favor of USSIC.

[3,4] The existence of a justiciable issue is a fundamental requirement to a court's exercise of its discretion to grant declaratory relief.[5] A "justiciable issue" needed for declaratory judgment requires a present substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[6]

[5] A declaratory judgment action will not be entertained if there is pending, at the time of the commencement of the declaratory action, another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the same identical issues that are involved in the

---

[3] *Freeman v. Hoffman-La Roche, Inc.,* 300 Neb. 47, 911 N.W.2d 591 (2018).

[4] *Mansuetta v. Mansuetta*, 295 Neb. 667, 890 N.W.2d 485 (2017).

[5] *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010), *abrogated on other grounds, City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

[6] See *id*.

declaratory action.[7] A court abuses its discretion when it entertains jurisdiction over a declaratory judgment action in such a situation.[8]

[6,7] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and the moving party is entitled to judgment as a matter of law.[9] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[10]

Much of the parties' briefing is devoted to arguing whether Edquist's conditional detention of the aircraft pending payment of a storage fee amounts to theft or tortious conversion, or at least whether a genuine issue of material fact exists on that issue. As we explain below, this record does not permit that question to be answered at this time in a declaratory judgment action. We conclude the district court abused its discretion in entertaining the declaratory action and express no opinion on the propriety of the summary judgment ruling.

Relevant Policy Provisions

Some additional background is necessary in order to frame the analysis. The aircraft policy's physical damage coverage provides in pertinent part:

1. What **We** Cover

a. Coverage F covers direct physical loss of or damage to **your aircraft** caused by an **accident** while the **aircraft** is not **In motion**.

---

[7] See *Mansuetta, supra* note 4.

[8] *Id.*

[9] *Jordan v. LSF8 Master Participation Trust,* 300 Neb. 523, 915 N.W.2d 399 (2018).

[10] *Id.*

. . . .

2. What **You** Must Pay or Bear (Deductible)

When **we** pay for loss of or damage to **your aircraft, you** must first pay or bear one of the following amounts unless no deductible applies:

. . . .

c. No Deductible

**We** will not subtract either deductible amount if the loss or damage is caused by:

(1) Fire, lightning, explosion, theft or vandalism;

. . . .

3. What **We** Will Pay (Less Deductible)

a. Destroyed **Aircraft**

If the cost of repair when added to the value of the **aircraft** after it is damaged and prior to repairs equals or exceeds the agreed **value** it is a destroyed **aircraft**.

If **your aircraft** is destroyed, **we** will pay the **agreed value** of the **aircraft** less the applicable deductible. **We** will take the destroyed **aircraft**.

b. Damaged **Aircraft**

If **your aircraft** is damaged and not destroyed, **we** will pay the reasonable cost of repair after the **aircraft** is repaired, but **we** will not pay more than the **agreed value** less the applicable deductible.

. . . .

If the estimated cost of repair . . . is more than the **agreed value** of the **aircraft, we** will pay the **agreed value** less the applicable deductible and **we** will take the damaged **aircraft.**

. . . .

4. What **We** Will Not Pay

**We** will not pay for physical loss or damage to **your aircraft:**

. . . .

h. *Embezzlement, Conversion or Secretion*

If **anyone** to whom **you** relinquish possession of the **aircraft** embezzles, converts or secretes [sic] the **aircraft**.

**We** also will not pay for depreciation, loss of use, loss of profits, loss of guaranty or warranty, or any other economic or consequential damage of any kind.

. . . .

7. Theft

If **your aircraft** or any part of it is stolen and recovered before **we** have paid for it, **we** may return it to **you** along with payment for any physical damage to it.

"Accident" is defined in the policy as a "sudden event during the policy period, neither expected nor intended by [the insured], that involves [the aircraft] and causes physical damage to or loss of the aircraft during the policy period." (Emphasis omitted.)

## PARTIES' COVERAGE
### ARGUMENTS

The policy's physical damage coverage "covers direct physical loss of or damage to [the aircraft] caused by an accident while the aircraft is not [i]n motion." (Emphasis omitted.) DSA makes no claim that the aircraft sustained any physical damage while in the possession of either Edquist or O'Daniel. The threshold coverage question thus turns on whether the undisputed evidence shows there has been no "direct physical loss" of the aircraft.

DSA argues there has been a "'direct physical loss'" of the aircraft because Edquist has either stolen the aircraft or converted it.[11] DSA claims that after it delivered the aircraft to O'Daniel, Edquist exercised "self-help" to unlawfully evict O'Daniel and seize the aircraft.[12] DSA claims that because Edquist has "no

---

[11] Reply brief for appellant at 26 (emphasis omitted).

[12] *Id.* at 13.

lien or right to withhold the plane," his continued possession of the aircraft pending payment of storage fees is unlawful and amounts to either theft or tortious conversion.[13]

USSIC responds that Edquist's detention of the aircraft is lawful. USSIC contends that after O'Daniel was evicted from the hangar, the aircraft was made available to be flown away, but DSA left the aircraft on the tarmac for more than a week before attempting to fly it away. USSIC argues that Edquist is therefore entitled to storage fees and is lawfully refusing to release the aircraft until such fees are paid.

Assuming, without deciding, that proof of either a theft or a conversion of the aircraft would be sufficient under the policy to demonstrate "direct physical loss of or damage to [the aircraft] caused by an accident while the aircraft is not [i]n motion" (emphasis omitted), we must nevertheless conclude that a judicial determination of noncoverage, premised on such a theory, is not possible on this record.

### Declaratory Judgment
### Was Premature

Here, determination of the coverage dispute turns, in large part, on whether Edquist's possession of the aircraft is lawful (as USSIC claims) or whether Edquist has stolen or converted the aircraft (as DSA claims). The evidence on lawfulness is controverted and lies at the center of what appears, from the record, to be an ongoing and unresolved civil dispute between Edquist, O'Daniel, and DSA. Although USSIC and DSA in this declaratory judgment action seek a judicial determination on the legality of Edquist's conditional possession of the aircraft pending payment of storage fees, neither Edquist nor O'Daniel were made parties to this action.[14]

---

[13] Brief for appellant at 15.

[14] See Neb. Rev. Stat. § 25-21,159 (Reissue 2016) (when declaratory relief is sought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration").

It is unclear from the record whether DSA has pursued direct legal action against either Edquist or O'Daniel. The briefs and motions filed with this court do conclusively show, however, that there is ongoing civil litigation between Edquist and O'Daniel, in which DSA has intervened. Importantly, the district court was aware of this litigation (although not of the intervention) at the time the declaratory judgment action was filed, as the lawsuit was clearly referenced in documents attached to USSIC's pleadings. It is a settled principle of law that relief via declaratory judgment should not be entertained if there is pending, at the commencement of the declaratory judgment action, another action or proceeding to which the same persons are parties and in which are involved, and may be adjudicated, the same issues involved in the declaratory action.[15]

[8,9] Further, the existence of a justiciable issue is a fundamental requirement to a court's exercise of its discretion to grant declaratory relief.[16] This court has long held that declaratory judgment cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain.[17] Nor is a declaratory judgment action to be used to adjudicate hypothetical or speculative situations which may never come to pass.[18]

We conclude the unresolved civil dispute between Edquist, O'Daniel, and DSA over the legality of the aircraft's continued detention and Edquist's demand for storage fees renders the district court's declaration regarding the availability of insurance coverage premised on theft or conversion premature and thus an abuse of discretion.

---

[15] *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing*, 273 Neb. 1026, 734 N.W.2d 750 (2007).

[16] *Kotas, supra* note 5.

[17] See *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981).

[18] *Ryder Truck Rental v. Rollins*, 246 Neb. 250, 518 N.W.2d 124 (1994).

We reach this conclusion because there are too many facts and issues that remain contingent and uncertain to enter a declaratory judgment regarding insurance coverage. There has been no determination of whether the aircraft is being lawfully detained, and the parties did not present the trial court with sufficient evidence, or the necessary parties, to allow for such a determination. The record also indicates that issues involved in this determination are being litigated in another forum and are thus not properly addressed in a declaratory action. And we cannot ignore the possibility that once the legality of Edquist's possession is determined, the aircraft may be returned to DSA, an outcome which could conceivably affect the coverage analysis.

We therefore conclude that the district court's order decided the legal effect of a state of facts which are future, contingent, or uncertain[19] and resulted in a declaratory judgment adjudicating hypothetical or speculative situations which may never come to pass.[20] As such, the court abused its discretion in entering declaratory relief, and we must reverse.

## CONCLUSION

For the reasons set forth above, we reverse the district court's order granting declaratory relief.

REVERSED.

---

[19] See *Novak, supra* note 17.

[20] See *Rollins, supra* note 18.