Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/07/2025 08:08 AM CST

U.S. SPECIALTY INSURANCE COMPANY, A
CORPORATION, APPELLEE, V. D S AVIONICS
UNLIMITED LLC, APPELLANT.

D S AVIONICS UNLIMITED LLC, APPELLANT, V.
U.S. SPECIALTY INSURANCE COMPANY,
A CORPORATION, APPELLEE.

___ N.W.3d ___

Filed November 7, 2025.    Nos. S-24-628, S-24-630.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. **____: ____.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

3. **Insurance: Contracts: Appeal and Error.** The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.

4. **Insurance: Contracts: Intent.** An insurance policy is a contract and is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.

5. **Insurance: Contracts.** In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved.

6. **____: ____.** The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.

7. ____: ____. An all perils policy impliedly covers all risks except those expressly addressed in the policy's exclusion paragraphs.
8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

Appeals from the District Court for Douglas County: Shelly R. Stratman, Judge. Reversed and remanded for further proceedings.

Amy M. Locher, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellant.

Earl G. Greene III, of Gordon & Rees, L.L.P., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Funke, C.J.

## INTRODUCTION

D S Avionics Unlimited LLC (DSA) had an insurance policy issued by U.S. Specialty Insurance Company (USSIC) that covered the "direct physical loss" of DSA's aircraft. The question raised in these consolidated appeals is whether DSA's claim that it was dispossessed of the aircraft by an airport owner, who held the aircraft pending the payment of storage fees that DSA allegedly owed on the aircraft, was within the policy's coverage. The district court for Douglas County, Nebraska, found that DSA's claim was not covered and ruled in favor of USSIC and against DSA on related matters. Because we disagree with the district court on the question of coverage, and for other reasons set forth below, we reverse the order of the district court and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

### Factual Background

This is the third time that matters related to the airport owner's seizure of DSA's aircraft have come before this court.[1] Our prior opinions set forth the factual background in some detail. For present purposes, we need note only the following.

DSA owned a 1964 Piper PA-30 aircraft. As is relevant here, between June 27, 2014, and June 27, 2015, that aircraft was covered by an insurance policy issued by USSIC. The policy covered "direct physical loss of or damage to [the] aircraft caused by an accident while the aircraft [was] not in motion," subject to specific exclusions. (Emphasis omitted.) One exclusion encompassed physical loss or damage to the aircraft resulting from the embezzlement, conversion, or secretion of the aircraft by anyone to whom DSA relinquished possession of the aircraft (hereinafter referred to as the "Conversion Exclusion"). The policy defined "[a]ccident" to mean "a sudden event during the policy period, neither expected nor intended by [the insured], that involves [the] aircraft and causes physical damage to or loss of the aircraft during the policy period." (Emphasis omitted.) There was no definition of "sudden event" or "direct physical loss" or any of their component terms.

In November 2014, DSA delivered the aircraft to a mechanic for maintenance. The mechanic operated out of a rented airport hangar in Omaha, Nebraska. He also rented an apartment at the airport. Shortly after the mechanic received the aircraft, he was locked out of the hangar in a dispute with the airport owner over allegedly overdue rent. The mechanic was eventually able to access the hangar and move the aircraft outside. DSA was not immediately able to retrieve the aircraft.

---

[1] See, *U.S. Specialty Ins. Co. v. D S Avionics*, 301 Neb. 388, 918 N.W.2d 589 (2018), *modified on denial of rehearing* 302 Neb. 283, 923 N.W.2d 367 (2019); *O'Daniel Flight Service v. Edquist*, 304 Neb. xix (No. S-19-325, Jan. 22, 2020).

DSA planned to retrieve the aircraft on December 12, only to discover that a truck had been parked in front of the aircraft, preventing it from moving. The airport owner refused to move the truck until he was paid a sum of money in rent. The money was not paid, and several days later, the aircraft disappeared from view. DSA then reported the aircraft stolen to the Douglas County sheriff's office and USSIC. However, the airport owner told the sheriff's office and USSIC that he was holding the aircraft pending the payment of fees that DSA allegedly owed him for storing the aircraft. DSA disputed that it owed any such fees and declined to pay.

The mechanic filed suit in the district court for Douglas County against the airport owner and another person associated with the airport, claiming that he had been unlawfully ousted from the property and that his personal property had been unlawfully distrained.[2] Among the property mentioned was DSA's aircraft, which the mechanic claimed that he held in bailment.

Shortly thereafter, DSA submitted a "Sworn Statement in Proof of Loss" to USSIC alleging "[a] theft loss." Specifically, DSA alleged that the aircraft had been unlawfully seized, distrained, converted, and stolen so as to "hold[] [it] ransom to extract payment of compensation." DSA claimed that the amount of the loss was $50,000, or the full insured value of the aircraft.

USSIC denied the claim on the ground that it was not covered by the policy. USSIC specifically quoted the provisions regarding "direct physical loss," the Conversion Exclusion, and the definition of "[a]ccident," discussed above. Instead, USSIC said that DSA knew "where the plane [was], who ha[d] it, and why they ha[d] it" but had taken no action against the mechanic.

DSA then requested an "explicit rationale" for the denial. In response, USSIC reiterated that DSA "ha[d] continuously

[2] See *O'Daniel Flight Service, supra* note 1.

known where [the] aircraft [was]" and could not have expected the aircraft to remain in the custody of either the mechanic or the airport "without having to pay something for it sitting there." USSIC also observed that while the mechanic had sued the airport's owner, DSA had not joined or participated in that lawsuit or taken action against the airport owner seeking the aircraft's return.

### Initial Legal Proceedings

Around the time when USSIC provided the foregoing rationale to DSA, USSIC filed suit against DSA in the district court for Douglas County, seeking a declaration that the policy did not cover the alleged loss of the aircraft. In its answer, DSA asserted a counterclaim alleging that USSIC had breached the parties' contract and acted in bad faith in denying DSA's claim.

DSA then intervened in the mechanic's lawsuit against the airport owner, alleging that the airport owner had converted the aircraft, among other things. The airport owner filed an answer in which he asserted a counterclaim against DSA. In that counterclaim, the airport owner alleged that he had a possessory lien on the aircraft and was entitled to recovery pursuant to that lien.

Subsequently, USSIC and DSA each moved for summary judgment in its favor on the parties' competing claims. After a hearing, the district court ruled in favor of USSIC and against DSA. The court found that DSA's claim was not within the policy's coverage, because the aircraft was "being held by [the airport owner] under demand of payment." As such, the court concluded that there had been no "accident." The court also found that the Conversion Exclusion applied and that USSIC had not breached the insurance contract or acted in bad faith. DSA appealed the ruling.

While DSA's appeal was pending, the district court issued a ruling in the mechanic's suit against the airport owner,

rejecting the airport owner's claim that he had a possessory lien on the aircraft. As a result of that ruling, the aircraft was finally released to DSA, nearly 3½ years after the truck had been parked in front of it and blocked it from moving. (DSA would subsequently allege that the aircraft was "substantially damaged" while in the airport owner's possession and sold for salvage.[3]) Notably, the district court did not address DSA's claims against the airport owner at that time.

We then issued our opinion in *U.S. Specialty Ins. Co. v. D S Avionics*,[4] reversing the order of the district court ruling in favor of USSIC and against DSA on the parties' cross-motions for summary judgment. In so doing, we reasoned that the "determination of the coverage dispute turns, in large part, on whether [the airport owner's] possession of the aircraft is lawful (as USSIC claims) or whether [the airport owner] has stolen or converted the aircraft (as DSA claims)."[5] However, we observed that the "civil dispute" between DSA, the mechanic, and the airport owner over the "legality of the aircraft's continued detention and [the airport owner's] demand for storage fees" remained "unresolved."[6] As such, we concluded that the district court's declaration regarding the availability of insurance coverage "premised on theft or conversion" was "premature and thus an abuse of discretion."[7]

## Subsequent Events and Proceedings

After we issued our opinion in *U.S. Specialty Ins. Co.*, DSA's conversion claim against the airport owner was dismissed without prejudice, apparently pursuant to a confidential

---

[3] Brief for appellant at 25.

[4] See *U.S. Specialty Ins. Co., supra* note 1.

[5] *Id*. at 398, 918 N.W.2d at 596.

[6] *Id*. at 399, 918 N.W.2d at 596.

[7] *Id*.

settlement agreement between DSA and the airport owner. In other words, the court did not find that the airport owner had converted the aircraft. However, at oral arguments in the present matter, USSIC conceded that the airport owner had converted the aircraft.

DSA then filed a complaint against USSIC in the district court for Douglas County alleging breach of contract and bad faith. That case was consolidated with the case involving USSIC's request for a declaration of noncoverage and DSA's counterclaim. Subsequently, USSIC and DSA each moved for summary judgment or partial summary judgment in its favor in the consolidated cases.

After a hearing, the district court ruled in favor of USSIC and against DSA. The court reasoned that there was no "loss" and no "accident" within the meaning of the policy, because the airport owner held the aircraft "under demand of payment" until the court found that he had no right to a lien on the aircraft. The court acknowledged DSA's claim that the airport owner's conduct amounted to theft or conversion. However, the court found that DSA failed to "establish[] the intent necessary for theft or conversion." The court also found that the Conversion Exclusion applied because "the [a]ircraft was secreted away due to [the mechanic's] failure to exercise proper care for it." In addition, the court found that even if coverage existed, DSA failed to provide "evidence of damages" because there was nothing to show that the "corrosion and rot" of which DSA complained had occurred while the insurance policy was in effect. Finally, the court found that DSA's breach of contract and bad faith claims failed as a matter of law because USSIC had an "arguable basis" upon which to deny DSA's claim.

DSA timely appealed, and we moved the matter to our docket.[8]

---

[8] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

## ASSIGNMENTS OF ERROR

DSA assigns, restated, that the district court erred or invaded the province of the jury (1) in finding that USSIC "acted in good faith" when denying its claim; (2) in finding that no "accident" occurred during the policy period; (3) to the extent that it required DSA to prove the loss was caused by a specific peril; (4) in finding that DSA failed to prove that the airport owner converted the aircraft; (5) in finding that the airport owner lacked the requisite intent for theft; (6) in finding that the mechanic's alleged negligence constituted conversion, triggering the policy's Conversion Exclusion; (7) in finding that DSA failed to show "damages" as a result of the direct physical loss of its aircraft; (8) in granting USSIC's motion for summary judgment; and (9) in denying DSA's motion for partial summary judgment on the question of coverage.

## STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[9] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[10]

[3] The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.[11]

---

[9] *Ricker v. Nebraska Methodist Health Sys.*, 319 Neb. 628, 24 N.W.3d 344 (2025).

[10] *Id*.

[11] *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022).

## ANALYSIS

### Claim Is Within Policy's Coverage and Conversion Exclusion Is Conceded Not to Apply

We begin with DSA's argument that the district court erred in finding that DSA's claim did not fall within the policy's coverage and that the Conversion Exclusion applied and, therefore, erred in ruling in favor of USSIC and against DSA on the parties' cross-motions for summary judgment or partial summary judgment. We do so because we agree with DSA, and our conclusion on the policy's coverage and exclusions encompasses, removes the need to address, or is dispositive of DSA's remaining claims.

[4,5] An insurance policy is a contract and is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.[12] In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved.[13] A claim must fall within the policy's coverage, and an exclusion must not be applicable.[14]

[6] A court construes insurance contracts like other contracts, according to the meaning of the terms that the parties have used.[15] When the terms of an insurance contract are clear, a court gives them their plain and ordinary meaning as a reasonable person in the insured's position would understand them.[16] The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not

---

[12] *Id.*

[13] *City of Lincoln v. County of Lancaster*, 297 Neb. 256, 898 N.W.2d 374 (2017).

[14] *Id.*

[15] *Merrick v. Fischer, Rounds & Assocs.*, 305 Neb. 230, 939 N.W.2d 795 (2020).

[16] *Id.*

be tortured to create them.[17] We often turn to dictionaries to ascertain a word's plain and ordinary meaning.[18]

In this case, neither party contends that the relevant provisions of the insurance policy are ambiguous. Instead, the parties dispute whether the claim falls within what they assert are the policy's unambiguous provisions regarding coverage. DSA argues that the claim is within the policy's coverage because an "accident" caused the "permanent physical loss" of the aircraft. Specifically, DSA argues that an "accident" occurred when the airport owner "suddenly and unexpectedly used his truck as a barricade to seize DSA's aircraft."[19] DSA claims that as a result of this "accident," it was dispossessed of the aircraft. USSIC, in contrast, argues that any loss of the aircraft was not due to an "accident," because the airport owner acted intentionally in parking or causing the truck to be parked in front of the aircraft. USSIC also argues that there was no "direct physical loss" of the aircraft because DSA ultimately recovered it.

Giving the terms of the policy their plain and ordinary meaning, we see no reason why the airport owner's parking the truck, or causing the truck to be parked, in front of the aircraft was not an "accident" within the meaning of the policy, as DSA argues. As was noted above, the policy defined "[a]ccident," in relevant part, to mean "a sudden event during the policy period, neither expected nor intended by [the insured]." The term "event" means "something that happens," an "occurrence."[20] "[S]udden" means "happening without

---

[17] *State Farm Fire & Cas. Co. v. TFG Enters.*, 308 Neb. 460, 954 N.W.2d 899 (2021).

[18] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

[19] Brief for appellant at 51.

[20] Webster's Third New International Dictionary of the English Language, Unabridged 788 (1993).

previous notice or with very brief notice."[21] It is not known exactly when the truck was parked in front of the aircraft, but there is no suggestion that the truck was parked there gradually over a period of time or outside the policy period. Nor does USSIC argue on appeal that DSA expected or intended the truck to be parked in front of the aircraft.

Instead, in arguing that there was no "accident" within the meaning of the policy, USSIC contends that the airport owner acted intentionally "in detaining the aircraft"[22] and that "[i]ntentional acts by definition cannot be accidents."[23] USSIC is correct that we have found that there was no coverage in cases where the purported "accident" was an intentional act and the policy either (1) defined "accident" or a related term in such a way as to exclude any action intended by the actor or the insured[24] or (2) was construed to that effect because it did not define "accident."[25] However, the policy at issue in the present matter expressly defined "accident" to include occurrences that were not expected or intended *by the insured*. USSIC acknowledges this language in the policy but claims that because the policy was "silent as to the intent of the actor,"[26] we should

---

[21] *Id.* at 2284. See, also, *Buell Industries v. Greater N.Y. Mut. Ins.*, 259 Conn. 527, 536, 791 A.2d 489, 496 (2002) ("sudden" includes "a temporal quality, which requires that the onset of the [event] in question occurs quickly or happens abruptly").

[22] Brief for appellee at 21. See, also, *U.S. Specialty Ins. Co., supra* note 1, 301 Neb. at 390, 918 N.W.2d at 591 ("[i]t is clear that parking the truck in front of the aircraft was done intentionally to block its removal").

[23] Brief for appellee at 21 (citing *City of Lincoln, supra* note 13).

[24] See *City of Lincoln, supra* note 13, 297 Neb. at 262, 898 N.W.2d at 379 (policy defined "'accident'" to mean "'an unintended and unexpected harmful event'").

[25] See *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001) (policy did not define "accident," and, as such, term was construed in its ordinary sense without reference to anyone's perspective).

[26] Brief for appellee at 22.

read the policy to exclude coverage for acts intended by the actor, as well as acts intended by DSA. We decline to adopt such an approach because it is inconsistent with the policy's plain language.

USSIC's argument that the occurrence of which DSA complains should not be seen to come within the policy's definition of "accident," because "it is against public policy to insure against liability for intentional acts,"[27] is equally unavailing. USSIC bases this argument on a statement that we made to that effect in *Austin v. State Farm Mut. Auto Ins. Co.*[28] However, the policy at issue in *Austin* did not define "accident" with reference to the insured's perspective, unlike the policy here. Moreover, our statement in *Austin* was based on a prior opinion of this court that concerned damages resulting from the intentional acts of the *insured*.[29] USSIC does not suggest that was the case here. To the contrary, when asked at a deposition whether the "taking" of the aircraft by the airport owner was intended by DSA, USSIC's designated representative admitted that he did not have any information to suggest that it was intended.

As to whether DSA experienced the "direct physical loss" of its aircraft as a result of the "accident," we take a similar view. USSIC does not dispute that DSA was physically dispossessed of the aircraft or that such dispossession could, depending on the circumstances, constitute a "direct physical loss" within the meaning of the policy. Instead, USSIC argues that DSA did not suffer the "direct physical loss" of the aircraft because it ultimately recovered the aircraft. USSIC bases this argument on case law from other jurisdictions that it construes to mean

---

[27] *Id.*

[28] *Austin, supra* note 25.

[29] See *Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388 (1979).

that a "direct physical loss" requires that the insured be permanently dispossessed of the property.[30]

We are not persuaded by that argument. All the cases cited by USSIC involved intangible or purely economic losses allegedly arising from an inability to operate a business due to restrictions imposed by the government during COVID-19. There was no suggestion in those cases that the property in question was physically in another person's possession. Nor was there any suggestion in those cases that one should look to what happens after a claim arising from a party's dispossession of property is denied to determine whether there was coverage, which is essentially what USSIC would have us do here. We also note that the approach proposed by USSIC would result in an insured potentially being found not to be entitled to coverage based on events that happened after its claim was denied, while the question of whether the insurer acted in bad faith is assessed at the time of the denial.[31]

USSIC is correct that we did previously opine in *U.S. Specialty Ins. Co.* that the return of the aircraft "could conceivably affect the coverage analysis."[32] However, we do not view this statement, which was made at an earlier stage in the litigation, to foreclose the conclusion we reach here. We also emphasize that in reaching the conclusion that we do, we do not view the loss of possession to be tantamount to the loss of use. As USSIC argued before the district court, the policy in question does exclude certain claims for loss of use. However, we understand the term "loss of use"

---

[30] See, *WP6 Restaurant Mgmt. Group v. Zurich American Ins.*, 595 F. Supp. 3d 973 (D. Nev. 2022); *Cordish Companies v. Affiliated FM Insurance Co.*, 573 F. Supp. 3d 977 (D. Md. 2021); *Till Metro Ent. v. Covington Specialty Ins. Co.*, 545 F. Supp. 3d 1153 (N.D. Okla. 2021); *Real Hospitality v. Travelers Casualty Ins.*, 499 F. Supp. 3d 288 (S.D. Miss. 2020).

[31] See, e.g., *LeRette v. American Med. Security*, 270 Neb. 545, 705 N.W.2d 41 (2005).

[32] *U.S. Specialty Ins. Co., supra* note 1, 301 Neb. at 400, 918 N.W.2d at 597.

in the relevant provisions of the policy to refer to economic or consequential damages arising from direct physical loss or damage, and not the inability to exercise ownership and control over one's property that comes from being dispossessed of the property.[33]

[7] This is not the first time that we, or another court, have found that, based on the language of a policy, a claim was within the policy's coverage even though the insured knew who had the property and could have availed itself of civil remedies to recover the property.[34] Where there is an all perils policy, as was the case here, that policy impliedly covers all risks except those expressly addressed in the policy's exclusion paragraphs.[35] The only exclusion at issue here was the Conversion Exclusion, to which we now turn.

The district court found that the policy's Conversion Exclusion applied, because the aircraft "was secreted away due to [the mechanic's] failure to exercise proper care for it." On appeal, DSA argues that the district court erred in so concluding. However, at oral arguments, USSIC conceded that the Conversion Exclusion does not apply, because that exclusion encompasses physical loss or damage resulting from specified acts by persons to whom DSA

---

[33] See, e.g., *Apex Solutions v. Falls Lake Ins. Mgmt.*, 100 Cal. App. 5th 1249, 1258, 319 Cal. Rptr. 3d 833, 840 (2024) ("[i]t is undisputed that 'direct physical loss' encompasses physical displacement or loss of physical possession").

[34] See, e.g., *Endurance Am. Ins. Co. v. StoneX Commodity Solutions, LLC*, 235 A.D.3d 489, 227 N.Y.S.3d 307 (2025); *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013); *American Alternative Ins. v. Superior Court*, 135 Cal. App. 4th 1239, 37 Cal. Rptr. 3d 918 (2006); *Union Planters Nat. Bank v. American Home Assurance Co.*, No. W2001-01124-COA-R3-C, 2002 WL 1308344 (Tenn. App. Mar. 18, 2002); *Intermetal Mexicana v. Insurance Co. of N. America*, 866 F.2d 71 (3d Cir. 1989); *Security Ins. Co. v. Commercial Credit Equip.*, 399 So. 2d 31 (Fla. App. 1981).

[35] *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020).

"relinquish[es] possession of the aircraft," and the evidence here did not show that. We agree with that conclusion.

## REMAINING ARGUMENTS

[8] DSA also claims that the district court erred in other regards. Specifically, DSA claims that the district court erred or invaded the province of the jury (1) insofar as it required DSA to prove the loss was caused by a specific peril, (2) in finding that DSA failed to prove the airport owner converted the aircraft, and (3) in finding that the airport owner lacked the requisite intent to establish theft. DSA also claims that the district court erred in finding that DSA failed to show "damages proximately resulting from the direct physical loss of its aircraft," a claim that we understand to refer to DSA's arguments regarding the policy's coverage and not the damages for its loss. However, because we found that DSA's claim was within the policy's coverage for "direct physical loss," and because USSIC conceded on appeal that the Conversion Exclusion does not apply, we need not address those arguments. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[36]

All that remains is DSA's claim that the district court erred in finding that USSIC "acted in good faith" in denying DSA's claim. The district court concluded that DSA's bad faith claim failed as a matter of law, because it found that DSA's claim was not within the policy's coverage and that the Conversion Exclusion applied.[37] However, for the reasons set forth above, the district court erred in reaching the conclusions that it did regarding the policy's coverage, and the Conversion Exclusion is conceded not to apply. Accordingly, we reverse the order of the district court sustaining USSIC's

---

[36] *Henderson State Co. v. Garrelts*, 319 Neb. 485, 23 N.W.3d 444 (2025).

[37] See, e.g., *LeRette, supra* note 31 (if lawful basis for denial exists, insured's bad faith cause of action fails as matter of law, regardless of manner in which investigation was or was not conducted).

motion for summary judgment and overruling DSA's motion for partial summary judgment on the question of coverage and remand the cause for further proceedings consistent with this opinion regarding whether USSIC acted in bad faith in denying DSA's claim and any damages that DSA may be entitled to under the policy.

## CONCLUSION

The district court erred in concluding that DSA's claim was not within the policy's coverage, and, on appeal, no exclusion is alleged to apply. As such, we reverse the opinion of the district court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.